Mr. Cogalli from the appellant Good morning Good morning your honors may it please the court my name is Lauren Cogalli and I represent the appellant in this case Walter Bridges I've indicated to the court officer that I would like to reserve three minutes rebuttal time all right very well if it's agreeable to the court I would like to rest on my briefs with regard to the issue of the district court's clearly erroneous factual findings and move directly into discussing why the police lacked reasonable suspicion in this case to conduct an investigatory stop of Mr. Bridges there are three reasons that this court should conclude that no reasonable suspicion existed at the time that Corporal Neese the police officer in this case stopped Mr. Bridges first most importantly and what sets this case apart from others is that Corporal Neese agreed during cross-examination on multiple multiple times that he initiated the investigatory stop of Mr. Bridges based on a hunch well does that matter I mean fourth amendment analysis is based upon an objective standard is it not rather than a subjective standard it is your honor however what Corporal Neese cannot do in this case and what he failed to do at the evidentiary hearing is articulate specific and articulable facts that constitute reasonable suspicion if there are the facts in the record whether he's he well yeah I mean his subjective motivation really is not relevant is it I don't believe your honor that his subjective motivation is relevant however even as even as subjective conclusions that he concluded it was a hunch well if the objective facts show that from an objective standpoint that a reasonable officer would find reasonable suspicion his subjective hunch just doesn't have relevance I would argue in this case that objectively there is no basis there are no specific and articulable facts all right that's that's the better argument I think to to create reasonable just to create reasonable suspicion to justify a stop here the only observation is this movement that Corporal Neese testifies about and I think it's the district court refers in its opinion to this movement as evasive and furtive however Corporal Neese in testifying has no ability to articulate why that movement was furtive or evasive he's not even sure when he's testifying he offers no concrete testimony that in fact he even knew that Mr. Bridges saw the police car approach okay I mean you can see that evasive action is evidence that can be used for reasonable suspicion that that's evidence of guilt or if there were evasive movement okay and here he he tested the officer testified that as he passed the vehicle Mr. Bridges went from a seated position to a slouch position where it appeared that he was hiding and the district court found as a matter of fact did he not that that was evasive the district court found in both found as a matter of fact and then also in its opinion that relied on that fact in its opinion that that was evasive however that's a finding of fact we review for clearly erroneous standard right yes your honor and I would argue you have to argue it was clearly erroneous the finding of fact that was an evasive move I would argue here that that is is is clearly erroneous that in fact there was nothing corporal needs offered nothing to indicate that that move was evasive and I think your honor that here this circuit's decision in gross is very important and I think it's just positive of this case the facts are almost identical the police pull up to a parked car in gross it happens to be in the early morning hours in this case it happens to be at dusk I would imagine it's probably equally dim and it's cold it's November and gross it's December in this case and the court says that and in gross the officer sees the person in the car actually react to the spotlight he clearly sees the police he reacts he abruptly sits up and then he hunches back as if he's hiding in that case the court found gross the seizure occurred before the evasive action here it occurred or no here the evasive action occurred before the seizure in gross it was the opposite was it not that is well I would argue your honor with all due respect that this action wasn't evasive that the yes it did occur here before officer niece testifies that he stops at a stop sign he sees a silhouette he stops at a stop sign he looks away he looks back he no longer sees the seizure at that point at that point there was no seizure officer niece then initiates his lights pulls in front of mr mr bridges the car in which mr bridges is sitting but here you know I think for that reason this stop is even more egregious because there's no indication that mr bridges even saw or acknowledged the police um he just there's the silhouette moved and officer just just the the uh the scene though bridges is parked on the side of the road over to the right yes your officer in his marked police car goes up to the intersection and passes bridges is that right on going going in the same direction and stops at the intersection so bridget with bridges would be in the position to see the the marked police car past his parked car would he not whether whether or not he actually saw the police car it would be in a position for bridges to see he would have been in a position to see but again he all right isn't it a reasonable inference then that he's sitting in his car that the police car passes him that it's reasonable infer that he probably didn't see the police car I don't know your honor that that that is reasonable infer I don't know what mr bridges was doing the car he sees a police car and then he takes of that evasive action in response to seeing a police car again I don't think there's any indication here that this but it but it's reasonable to infer though is it is it not I don't think it's reasonable to infer quite frankly mr bridges testified that he was sitting in the car texting I don't know that there's any indication I don't believe there's any indication in the record that he was reacting to seeing the police car corporal niece certainly offered no testimony to indicate that mr bridges movement was reaction in reaction to seeing the police car and as corporal niece testified he'd seen people sit like this in a car numerous times that never gave rise to suspicion here he says he felt like perhaps there was a motor vehicle theft going on and and I and I think this is important because you know a corporal niece testifies agrees in his testimony right that he um had this hunch but then the language he uses later is is no stronger to justify his stop he says I believed I felt I had an initial thought none of these things rise to the level of specific and articulable facts required for reasonable suspicion um I'd like to address the intervening act argument that the that the government raised in its briefs um before I I conclude um one other point with regard to the reasonable suspicion I argued in my brief and I and I think it's very important to note that the court relies very heavily in these contextual factors when it finds that there was a basis for the reasonable suspicion it concludes that this was a high crime area um and it uses those contextual factors to bolster its contention that there was um evasiveness and I think it's just important to note that with regard to the high crime area um corporal niece you know says he made previous arrests for firearms offenses the court relies on that um to make a factual finding that there's a high crime area subsequently to corporal niece testifies that he made one single firearm arrest in the area in that area two years prior that's at page id 619 and that over the course of a 15 year career he'd only made 10 to 20 narcotics arrests none of which had occurred in that area and I do think that's important in terms of um deciding whether those contextual factors can be used to bolster that argument with regard to the intervening act you know two things first um I would ask that the court yes before you move on I mean if if this were a high crime area you concede that the standard for the fourth amendment is somehow different no your honor I don't believe that the officer here had reasonable suspicion to initiate the stop regardless of whether it was a high crime area or not what does that what does it matter whether it's a high crime area or not I think it's important here because the court uses it in its factual findings and its legal findings to um bolster its finding that there was reasonable suspicion it relies on that as a basis to say that in the context of this high crime area mr okay would you concede then that if it is a high crime area that the threshold for reasonable suspicion is less than if it's not a high crime area no your honor I I think still regardless of whether it's a high crime area or not you have to have specific and articulable facts that equate reasonable of criminal activity and those just don't exist here so I don't think it changes the analysis but I do think that in reviewing the district court's finding it's important to note that that reliance on those contextual factors aren't borne out by the record here with regard to the intervening act again this was not raised below there was no good cause for failing to raise it before the district court so I would ask that the court not consider the intervening act argument however even looking to the merits of it the factors that the court must consider the temporal proximity the purposefulness and flagrancy of police misconduct in the uh particularly the first two factors way against attenuation I'm going to focus on the intervening act here the government argues that the that the mr bridges hitting the officer is the intervening act and you know I think it's important here I don't know that there's a whole lot of argument to say that that doesn't rise to the level of an intervening act but here the two other factors weigh so heavily against attenuation and here I think it's important to note that the totality of these factors and the lack of reasonable suspicion or any other basis for finding for justifying that stop here the intervening act this exception to the exclusionary rules just shouldn't be applied here the purpose is to deter um police from engaging in misconduct and and and that act just shouldn't let the police officer out of that here any further questions no thank you you'll have your three minutes rebuttal yes thank you good morning good morning I may have pleased the court Shane Carly for the United States I think there are a few things that uh I would like to address based on counsel's argument um actually the first thing I'd like to do is just make sure I clarify my understanding of the uh approach just um for the court's purposes as I as I understood from the record uh Walter Bridges was parked on the side of the street and Corporal Neese and Deputy Hall were driving toward him I don't believe they ever passed him um and I thought they parked in front of them they did park in front of him but I just want to make that clear because based on your question look behind that uh when I first this is the officer when I first observed the vehicle I I seen a silhouette of a person in the driver's seat and as I stopped at the stop sign to look at traffic I when I looked back to this the silhouette was gone I mean the officer said he looked back so I I assumed that he passed I I read that back as not to mean behind but as looking again to the car um oh okay so so again I I don't think that that changes anything but I did want to clarify the the court because that's not my impression and perhaps I'm the only one but I my understanding is Walter Bridges parked here the officers pull here and they see all of this while they're parked at the stop sign all facing forward the officer goes up to the intersection correct you're saying that Bridges is past is parked past the intersection it's as if if I'm at the intersection and you were Walter Bridges and that is when the the slash occurs they then pull forward and they park at a diagonal so they never actually pass his vehicle I don't think that changes anything but I did at least wanted to correct they nosed him in I'm sorry they nosed him in so he couldn't leave uh well your honor I think I think that's a an issue of dispute um the record is unclear the the officers parked at a diagonal so they're parked in the middle of the street then there was the question of whether there there was a car parked in front of him uh corporal knee said that there was a vehicle parked in front of him deputy hall said there was not uh both officers agreed that there was no vehicle behind him I believe he could have reversed his vehicle and pulled out of that whether he would have or not uh I cannot say but he could have withdrawn from that area whatever you you admit he was seized when they parked their car and and put the lights on him right uh your honor actually the the seizure didn't occur at that point um I think for our purposes it's it's immaterial because there is reasonable suspicion and I don't want to uh go down a an area that I'm not sure is necessary I think technically under the law under car at least uh the fact that he could have withdrawn would mean that the seizure did not occur at the part the point that he parked his vehicle nevertheless I think the the easier argument here and the more helpful argument is simply to just to block it then I mean unless unless it's obvious he's not complying with it but okay I guess that's not the issue here I I think you're I think the facts are certainly suggestive of your interpretation there really isn't much here for reasonable suspicion I know reasonable suspicion is a low threshold standard but really I mean this is a very weak case when the only the only evidence that leads to a conclusion of reasonable suspicion is a guy slouching down in his car it is a close call your honor I would certainly agree it's a close call nevertheless I do think that this is sufficient for a finding of reasonable suspicion all the reasonable suspicion requires is a minimum level of objective justification and here the officers believed uh and I'll quote from the record here that he moved he slouched to the side uh to try to hide and not be detective uh detected and that was on page 924 from the trying to avoid being seen this was at page 645 of the record essentially the officer's objective justification was that this particular individual in their mind ducked down in order to avoid being seen because he was engaged in some sort of criminal activity I agree that that is a very close call but this is a gesture of a furtive gesture as Judge Cox found and this is in a high crime area where you know the contextual factors while they don't change anything they are certainly relevant to this court's analysis in fact I think the the case that um Mr. Bridges relies on c is very uh illustrative of my point in c we had a situation where we have all these contextual factors we've got a high crime area we have a apartment building in a high crime area middle of night it was 4 30 and an officer is patrolling and he parks behind a vehicle so the seizure occurs at that point but the officer there didn't have anything more than just three individuals parked in a dimly lit area at 4 30 in the middle of the night in a high crime area and even there this court said it was a very close call and had there been anything else some sort of reason suspicious some sort of other act some sort of suspicion that criminal activity was engaged in addition to all those contextual factors then that would have been sufficient and that was uh I believe that was Judge Gilman's uh concurrence in that sense in that opinion here we've got all those contextual factors we've got this high crime area okay now do your rights rights under the fourth amendment rise and fall depending on where you live no certainly not your honor okay so uh or where you travel I mean why should the fourth amendment be interpreted differently in different parts of the state your honor reasonable suspicion is measured by the totality of the circumstances and so certain circumstances each in and of when viewed together may substantiate a finding of reasonable suspicion and so here I agree with you wholeheartedly that just the fact that someone lives in a high crime area it does not in and of itself mean anything or you're going to work on the third shift of the chevy plant two in the morning certainly agree police don't have a license to stop you because you're going to work and you happen to live in the city of Detroit I completely agree I think the difference though your honor is that if we were to take an area that is not a high crime area and and of consequence here high crime area is not just a particular neighborhood I mean high crime areas can be temporal for example if there's a crime wave in a particular part of a city or particular area so let's imagine a suburb that ordinarily has no crime whatsoever and then all of a sudden is there's a crime wave and there are a rash of robberies at that point because we have a high makes actions that may otherwise not give rise to reasonable suspicion but those in the totality of circumstances the officers may believe that that person some sort of action may be the result or maybe the cause of that but it's got to be an objective I mean it does have to be objective it does have to be objective but again the totality of circumstances that read that high crime area can essentially add to and give perhaps a thumb on the scale I'm not saying that in and of itself is enough because it certainly is not and this court has been very clear on that in Carothers for example so returning to to see and gross I think the clear distinction between those cases is when the seizure occurred in those cases both in see and gross the seizure occurred before any other sort of action or any sort of facts took place gross for example the slouch that was described this happened after the seizure whereas in this case the seizure occurred after Mr. Bridges had made his furtive gesture so to speak and so again a close call yes but it is more than what was required and more than what this court found to be a close call and gross and so for that reason I believe there is a reasonable suspicion I would also note that high crime area is not based on a particular officer's specific experience certainly that's not the standard we need something more objective than whether a particular officer is engaged in one arrest or a hundred arrests in a particular area and so here we have a situation where these officers as noted in the trial testimony Deputy Hall noted this is an area where they have a particular focus and they have comstat meetings where the police departments of all the different jurisdictions to get together to talk about what is high crime in the city and this is a particular area of focus and so whether or not Deputy Hall or Corporal Neese had engaged in one arrest or 100 arrests this is a high crime area and so that is certainly relevant your honor I would like to turn to the issue of intervening act if there are no further questions about Mr. Bridges' argument. Well before we address it have you preserved the intervening act argument? That was my first question. You didn't raise it in district court did you? Your honor first of all this court can affirm for any reason based on the record the issue is of whether or not something is preserved is an issue for the appellant not for the appellee and so the go ahead your honor. It's a defense to the motion to suppress that you didn't raise and the district judge didn't consider it. With the district judge right is that correct? The district judge did not make a finding as to there being an intervening act the district judge did address whether or not there was a probable cause to find the arrest and the district judge did make an adequate record for this court to rely upon in order to affirm based on the intervening act. Judge Cox in response to Mr. Bridges' motion to suppress found that there was probable cause because in his findings he believed or he found that Mr. Bridges swung a punch at Corporal Neese as he exited the vehicle. This is on page I'm sorry this is on page eight of his opinion yes on page eight. Judge Cox said found that Bridges immediately swung a closed fist at Corporal Neese and then struggled with the officers and during that struggle a loaded firearm magazine fell from his person. So there's a sufficient record for this court to affirm for that reason and again returning to the crux of your issue whether or not an issue is preserved is an issue for the appellant and certainly the issue of whether it's waived I mean I would submit under SOTA which this court just recently issued that even their waiver is no error at this point but no we did not raise this below but that was not why not as for why the I would be speculating your honor I'm sorry you want us to make a ruling on appeal of an issue that was not presented to the district court that you think is dispositive I would I would we don't do it very often I would submit that that is that there is sufficient basis in this record for this court to affirm for that reason and that it is an appropriate exercise of this court's authority to affirm for that reason and and the case law is quite clear whenever there is an independent intervening act such as this here we have Mr. Bridges swinging a punch as he exits the vehicle and as a result of that that stops the that that essentially is a break in the chain all of the evidence obtained in this case occurred after that in the cases that the there is no attenuation is clear the evidence is all found after the independent act the officers scuffled with Mr. Bridges that's when the loaded magazine fell to the ground they then arrested him based on this assault and at that point they found another magazine on his person and then when they go search the vehicle they see a firearm in plain view they have probable cause then they have probable cause they can search incident to a lawful they can search a vehicle incident to a lawful arrest when it is reasonable to believe that evidence relevant to the crime of arrest may be found in the vehicle and here you have evidence of magazine and then again a firearm in plain view at that point they then searched the vehicle and found another stolen firearm underneath the the front seat and the crack cocaine if there are no further questions thank you very much okay we don't thank thank you all right rebuttal you got three minutes your honor i just like to make your honors i'd like to make two points in in response to the government's argument you know one this this case the question of reasonable suspicion clearly falls on whether Mr. Bridges movement in the car can be objectively be considered furtive or evasive because that is the only thing that occurs that draws corporal Neece's attention to Mr. Bridges in this vehicle again i argue that it it is not there's no indication that movement was in reaction or to avoid the police there's no other evidence of criminality um Mr. Bridges did not attempt to leave when the spotlight was when when the police if he saw the police he certainly didn't attempt to leave the officer wasn't responding to a tip he didn't run the plate to see if there was an actual car theft occurring or if the car was stolen and there just was no other evidence of criminal activity so so i would just argue that there is no basis to to find that that movement was furtive with regard to the intervening act even looking at the the merits of the government's argument i think it's very important to note that those first those two factors the purple purposefulness of the official misconduct and the temporal proximity weigh very heavily in favor of mr of they're not being attenuation here between the stop and the and the the unlawful activity the unlawful stop and the seizure of the evidence and i think williams united states versus williams provided guidance here it talks about when the purple purposefulness factor is is met when the unlawful action is investigatory that is when the officers unlawfully sees a defendant in the hope that something might turn up and that's exactly what happened here off corporal niece was acting on a hunch he thought he felt he had a feeling that something was going on and he looked into it this the course of the stop happened over minutes corporal niece testified that between the time he saw the vehicle and the time he pulled in front of the vehicle to block it that 20 seconds passed so i think you can extrapolate that this interaction takes just minutes before this criminal activity is found so here i just don't think considering the totality of the circumstances that that third factor the intervening act outweighs those other two factors so substantially that you should find that this exception to the exclusionary rule applies and in fact because there is no other basis for this stop this is exactly the type of case in which the court should take the opportunity to exclude this out to reverse the district court exclude this evidence and and deter the police from engaging in such acts any further questions no all right thank you your honor case will be submitted they call the next case